Document: 2009 Immig. Rptr. LEXIS 9713

## 2009 Immig. Rptr. LEXIS 9713

**Copy Citation**

Administrative Appeals Office

Date: JUN 04, 2009

FILE: EAC 07 148 52530--OFFICE: VERMONT SERVICE CENTER

**BIA & AAU Non-Precedent Decisions**

**Reporter**

**2009 Immig. Rptr. LEXIS 9713 \***

IN RE: Petitioner: [redacted] Beneficiary: [redacted]

### Core Terms

specialty, occupation, beneficiary, proffer, analyst, bachelor's degree, computer system, higher degree, work experience, credential, alien, train, baccalaureate, handbag, criterion, redact, accredit, coursework, expertise, director's decision, bachelor's, sheet, documentary evidence, evidentiary, practical application, college-level, nonimmigrant, programmer, computer programming, qualification

### Counsel

**[*1]**

ON BEHALF OF PETITIONER:

SELF-REPRESENTED

**Opinion By:** Decision transmittal issued by: John F. Grissom, Acting Chief, Administrative Appeals Office

## Opinion

**AAO Designation: D2**

**PETITION: Petition for a Nonimmigrant Worker Pursuant to Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b)**

**DISCUSSION:** The director of the service center denied the nonimmigrant visa petition and the matter is now before the Administrative Appeals Office (AAO) on appeal. The appeal will be dismissed.

The petitioner is a corporation providing software development and computer consulting services. To employ the beneficiary in what the petitioner designates as a computer systems analyst position, the petitioner seeks to classify him as a nonimmigrant worker in a specialty occupation pursuant to section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (the Act), 8U.S.C. § 1101(a)(15)(H)(i)(b).

As indicated in the following excerpt from his decision, the director denied the petition for the petitioner's failure to establish that the beneficiary is qualified to serve in a specialty occupation:

> You failed to establish that the beneficiary **[*2]** earned a Bachelor's degree or that he has experience in the specialty equivalent to the completion of such a degree, and that he is recognized for his expertise in the specialty through progressively responsible positions relating to the specialty.

The AAO also observes that, while the director's decision addresses the beneficiary's credentials in terms of whether they qualify him to serve in a specialty occupation position requiring a bachelor's degree level of knowledge "in a field of study that related to computer programming and analysis," the director's decision does not contain a finding that the proffered position is in fact a specialty occupation.

On appeal, the petitioner submits the following: (1) the Form I-290B; (2) an introductory letter from the petitioner's HR Director, dated December 12, 2007; (3) a document entitled "Appeal to the AAU," also from the petitioner's HR Director and dated December 12, 2007; (4) a copy of the petitioner's September 7, 2007 letter responding to the service center's request for additional evidence (RFE); (5) a copy of the chapter "Computer Programmers" from the 2006-2007 edition of the Department of Labor's *Occupational Outlook* **[*3]** *Handbook Handbook)*; (6) a printout of the Summary Report on Computer Systems Analysts at the Department of Labor's *0*NET Online* Internet site; (7) a copy of a document on Pt. Ravishankar Shukla University letterhead, dated October 21, 1993, stating that it certifies that the beneficiary passed the 1992 Bachelor of Engineering Examination in 1992 and "is admitted today to the Degree of Bachelor of Engineering in Metallurgy Engineering"; (8) copies of *(a)* the Semester 4-8 Mark Sheets submitted prior to the director's decision, and *(b)* Mark Sheets for Semesters I-3, which were not previously submitted into the record; (9) previously submitted copies of the beneficiary's high school record; (10) copies of the two memoranda from the human resource managers of former employers, which had been submitted prior to the director's decision; (11) a document entitled "Credentials Evaluation Report" procured by the petitioner from **[redacted]** as an evaluator for Career Consulting International (CCI); (12) a document entitled "Expert Opinion on Educational Evaluation" from **[redacted]** writing for the Alcott Center for Educational Research--Foreign Credential Evaluation of European-American **[*4]** University, LTD.; located in the Commonwealth of Dominica (hereinafter referred to as the EA-U evaluation); and (13) the following three tables: *(a)* "List of Candidates with Computer System Analyst [P]osition"; *(b)* "List of Employees with [S]imilar [J]ob Positions"; and (c) "List of Companies with [S]imilar [J]ob Positions."

As will be discussed below, the AAO finds that the petition must be denied not only because the director was correct in concluding that the petitioner had not established that the beneficiary is qualified to serve in a specialty occupation of the type asserted in the petition, but also because the evidence of record does not establish that the proffered position is a specialty occupation. The AAO will address the specialty occupation issue first.

**SPECIALTY OCCUPATION ISSUE**

*Analytical Framework*

In deciding whether a proffered position qualifies as a speciality occupation, the AAO analyzes the evidence of record according to the statutory and regulatory framework below.

Section 101(a)(15)(H)(i)(b) of the Act, 8 U.S.C. § 1101(a)(15)(H)(i)(b), provides a nonimmigrant classification for aliens who are coming temporarily to the United **[*5]** States to perform services in a specialty occupation.

Section 214(i)(l) of the Act, 8 U.S.C. § 1184(i)(l), defines the term "specialty occupation" as an occupation that requires:

> (A) theoretical and practical application of a body of highly specialized knowledge, and
>
> (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

Thus, it is clear that Congress intended this visa classification only for aliens who are to be employed in an occupation that requires the theoretical and practical application of a body of highly specialized knowledge that is conveyed by at least a baccalaureate or higher degree in a specific specialty.

Consistent with section 214(i)(l) of the Act, the regulation at 8 C.F.R. § 214.2(h)(4)(ii) states that a specialty occupation means an occupation "which [1] requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, **[*6]** law, theology, and the arts, and which [2] requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States."

Pursuant to 8 C.F.R. § 214.2(h)(4)(iii)(A), to qualify as a specialty occupation, the position must meet one of the following criteria:

> *(1)* A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> *(2)* The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> *(3)* The employer normally requires a degree or its equivalent for the position; or
>
> *(4)* The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

As a threshold issue, it is noted that 8 C.F.R. § 214.2(h)(4)(iii)(A) must logically be read together with section 214(i)(l) of the Act, 8 **[*7]** U.S.C. § 1184(i)(l), and 8 C.F.R. § 214.2(h)(4)(ii). In other words, this regulatory language must be construed in harmony with the thrust of the related provisions and with the statute as a whole. *See* K Mart Corp. v. Cartier Inc., 486 U.S. 281, 291 (1988) (holding that construction of language which takes into account the design of the statute as a whole is preferred); *see also* COIT Independence Joint Venture v. Federal Sav. and Loan Ins. Corp., 489 U.S. 561 (1989); Matter of W-F-, 21 I&N Dec. 503 (BIA 1996). As such, the criteria stated in 8 C.F.R. § 214.2(h)(4)(iii)(A) should logically be read as being necessary but not necessarily sufficient to meet the statutory and regulatory definition of specialty occupation. To otherwise interpret this section as stating the necessary *and* sufficient conditions for meeting the definition of specialty occupation would result in particular positions meeting a condition under 8 C.F.R. § 214.2(h)(4)(iii)(A) but not the statutory or regulatory definition. *See* Defensor v. Meissner, 201 F.3d 384, 387 (5th Cir. 2000). To avoid this illogical and absurd result, 8

C.F.R. § 214.2(h)(4)(iii)(A) must therefore be read as stating additional **[*8]** requirements that a position must meet, supplementing the statutory and regulatory definitions of specialty occupation.

**Consonant with section 214(i)(l) of the Act and the regulation at 8 C.F.R. § 214.2(h)(4)(ii), U.S. Citizenship and Immigration Services (USCIS) consistently interprets the term "degree" in the criteria at 8 C.F.R. § 214.2(h)(4)(iii)(A) to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the proffered position. Applying this standard, USCIS regularly approves H-1B petitions for qualified aliens who are to be employed as engineers, computer scientists, certified public accountants, college professors, and other such professions. These occupations all require a baccalaureate degree in the specific specialty as a minimum for entry into the occupation and fairly represent the types of professions that Congress contemplated when it created the H-1B visa category**.

*Analysis*

At Part 5 of the Form I-129 (Petition for Nonimmigrant Worker) the petitioner stated the Job Title as "Computer Systems Analyst." In its letter of response to the service center's RFE, the petitioner provided the following "Summary **[*9]** of Specific Duties of the Job Offered to the Beneficiary":

 Analyze user requirements, procedures, and problems to automate or improve existing systems and review computer system capabilities, workflow, and scheduling limitations.

 Test, maintain, and monitor computer programs and systems, including coordinating the installation of computer programs and systems.

 Use object-oriented programming languages, as well as client and server applications development processes and multimedia and Internet technology.

 Confer with clients regarding the nature of the information processing or computation needs [that the] computer program is to address.

 Review and analyze computer printouts and performance indicators to locate code problems, and correct errors by correcting codes.

 **[*10]** Expand or modify system[s] to serve new purposes or improve work flow.

 Determine computer software or hardware needed to set up or alter system.

 Analyze information processing or computation needs and plan and design computer systems, using techniques such as structured analysis, data modeling and information engineering.

 Assess the usefulness of pre-developed acquisition packages and adapt them to a user environment.

The "Job Description" section of the petitioner's letter of response to the RFE newly refers to the proffered position as a "business systems analyst" job; states that "the minimum education and training/experience" necessary for the position is "a Bachelor['s] degree in Science, Math, Computer Science, Engineering, or closely related scientific field, and cites to the 1996-1997 edition of the *Handbook* for the proposition that "[e]mployers almost always seek college graduates in Engineering, Computer Science, Math and related **[*11]** fields for computer professional positions; for some of the more complex jobs, persons with graduate degrees are preferred."

The AAO recognizes the *Handbook* as an authoritative source on the duties and educational requirements of the wide variety of occupations that it addresses. The petitioner's reference to the 1996-1997 edition of the *Handbook* has little value, not only because that version of the *Handbook* is outdated, but also because the quote itself does not specifically address computer systems analysts or even indicate that such an occupational category existed in 1996 or 1997. The 2008-2009 edition of the *Handbook* has a chapter devoted exclusively to Computer Systems Analysts. [1] Review of that chapter indicates that, while the technical dimensions specific to a particular computer systems analyst position may require a bachelor's or higher degree in a specific specialty, many computer systems analyst positions do not require such a degree. The chapter also indicates that computer **[*12]** systems analysts do not

comprise an occupational class or category which normally requires or is usually associated with at least a bachelor's or higher degree in a specific category. Thus, to establish the proffered position as a specialty occupation, it is incumbent on the petitioner to provide evidence sufficient to distinguish the proffered position from the range of computer systems analyst positions not requiring a degree in a specific specialty. This the petitioner has failed to do.

The *0*NET Online* submission indicates no more than that the Department of Labor groups the Computer Systems Analysts among occupations of which "most" require "a four-year bachelor's degree, but some do not." This information is not probative that the particular position proffered here requires or is usually associated with at least a bachelor's degree in a specific specialty.

The AAO notes that the petitioner's submission on appeal includes a copy of the 2006-2007 edition of the *Handbook's* chapter on "Computer Programmers." This submission has little relevance, as the evidence of record does not establish that the beneficiary's involvement with programming would be sufficient to characterize **[*13]** the proffered position as requiring the credentials necessary for a computer programmer position. The petition has been filed for a Computer Systems Analyst, a type of position that the *Handbook* assigns to an occupational category separate and distinct from Computer Programmers. In fact, besides assigning a separate chapter to Computer Systems Analysts, the 2006-2007 *Handbook* includes this statement in its chapter of computer programmers:

> Programmers write programs according to the specifications determined primarily by computer software engineers and systems analysts. (Separate statements on computer software engineers and on computer systems analysts appear elsewhere in the *Handbook.*) After the design process is complete, it is the job of the programmer to convert that design into a logical series of instructions that the computer can follow

The petitioner's assertions of the necessity for a degree in a specific specialty have no evidentiary value, as they are not supported by documentary evidence in the record. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. *Matter* **[*14]** of Soffici, 22 I&N Dec. 158, 165 (Comm. 1998) (citing Matter of Treasure Craft of California, 14 I&N Dec. 190 (Reg. Comm. 1972)).

In addition, a critical deficiency which by itself prevents the approval of this petition is the fact that the record does not include contracts, specifications, work orders, or any other documents that establish the substantive nature of the work that the petitioner's clients had determined that the beneficiary would perform during the period of employment specified in the petition. The record indicates that the substantive nature of the specific duties, and consequently the knowledge required to perform them, would be determined by particular client projects to which the beneficiary would be assigned. As the record lacks documentary evidence of such projects, the petitioner has not established a foundation by which USCIS can reasonably determine either the level of knowledge in any specific specialty that would be required by or associated with the proffered position or that the petitioner had any specific employment designated for the beneficiary at the time the petition was filed. USCIS regulations affirmatively require a petitioner to establish **[*15]** eligibility for the benefit it is seeking at the time the petition is filed. *See* 8 C.F.R. 103.2(b)(1). A visa petition may not be approved at a future date after the petitioner or beneficiary becomes eligible under a new set of facts. Matter of Michelin Tire Corp., 17 I&N Dec. 248 (Reg. Comm. 1978). Accordingly, the petition must be denied for its failure to establish the actual nature of the work for which it was filed.

The petitioner has not satisfied the criterion at 8 C.F.R. § 214.2(h)(4)(iii)(A)(l), which assigns specialty occupation status to a position for which the normal minimum entry requirement is a baccalaureate or higher degree, or the equivalent, in a specific specialty closely related to the position's duties.

The record's descriptions of the duties comprising the proffered position generally comport with the Computer Systems Analyst occupational category as discussed in the 2008-2009 edition of the *Handbook*. However, neither those descriptions nor any other evidence of record distinguish the proffered position from those computer systems analyst positions which do not require at least a bachelor's degree or the equivalent in a specific specialty closely **[*16]** related to their duties. Given the lack of substantive evidence about the actual performance requirements of the work designated for the beneficiary to perform for the particular clients generating that work, the record fails to establish both the substantive nature of the actual work that the beneficiary would perform and the nature and educational level of knowledge required to perform it.

Next, the AAO finds that the petitioner has not satisfied the first of the two alternative prongs of 8 C.F.R. § 214.2(h)(4)(iii)(A)(2).

The first alternative prong assigns specialty occupation status to a proffered position whose asserted requirement for at least a bachelor's degree in a specific specialty is common to positions in the petitioner's industry that are both (1) parallel to the proffered position and (2) located in organizations that are similar to the petitioner.

In determining whether there is such a common degree requirement, factors often considered by USCIS include: whether the *Handbook* reports that the industry requires a degree; whether the industry's professional association has made a degree a minimum entry requirement; and whether letters or affidavits from **[*17]** firms or individuals in the industry attest that such firms "routinely employ and recruit only degreed individuals." *See* Shanti, Inc. v. Reno, 36 F. Supp. 2d 1151, 1165 (D.Minn. 1999) (quoting Hird/Blaker Corp. v. Sava, 712 F. Supp. 1095, 1102 (S.D.N.Y. 1989)).

The AAO here reiterates that the degree requirement set by the statutory and regulatory framework of the H-1B program is not just a bachelor's or higher degree, but such a degree in a specific specialty that is directly related to the specialty occupation claimed in the petition.

As reflected in this decision's earlier comments, the *Handbook* does not indicate that a computer systems analyst position as so generally described in this petition would require at least a bachelor's degree in a specific specialty. Thus, the *Handbook* does not support a favorable finding under this criterion. The AAO also notes that the record does not include submissions from a professional association or from individuals or other firms in the petitioner's industry attesting to routine employment and recruiting practices.

The AAO attributes no evidentiary weight to the table entitled "List of Companies with [S]imilar [J]ob **[*18]** Positions." The list is not accompanied by any documentary evidence supporting it. Going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. Matter of Soffici, 22 I&N Dec. at 165. Further, there is no evidence that the practices of the few firms listed represent an industry-wide hiring and recruiting practice.

The petitioner also has not satisfied the second alternative prong of 8 C.F.R. § 214.2(h)(4)(iii)(A)(2), which provides that "an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree."

The record does not contain substantive evidence about the proffered position and its duties that distinguish the position as unique from or more complex than the range of computer systems analysts specialist positions for which the *Handbook* indicates there is no requirement for a bachelor's or higher degree in a specific specialty.

Next, the petitioner has not satisfied the third criterion of 8 C.F.R. § 214.2(h)(4)(iii)(A), by establishing that the employer normally requires a degree or its equivalent for the position. **[*19]** To merit approval of the petition under this criterion, the record must contain documentary evidence demonstrating that the petitioner has a history of requiring the degree or degree equivalency in its prior recruiting and hiring for the position. The "List of Candidates with Computer System Analyst Position" and "List of Employees with Similar Job Positions" are insufficient evidence of the petitioner's prior recruiting and hiring for the proffered position. They are assertions that are not substantiated by any documentation in the record. Again, going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings. Matter of Soffici, 22 I&N Dec. at 165.

Further, the petitioner should note that each nonimmigrant petition is a separate proceeding with a separate record. *See* 8 C.F.R. § 103.8(d). In making a determination of statutory eligibility, USCIS is limited to the information contained in the record of proceeding. *See* 8 C.F.R. § 103.2(b)(16)(ii). A petitioner's reference to the petition receipt numbers of other petitions is not documentation of any point that the petitioner intends to make about **[*20]** the substantive nature of that petition. Although the AAO may attempt to hypothesize as to whether the petitions cited relate to positions similar to the proffered position or were approved in error, no such determination may be made without review of the original record in its entirety. If any referenced petition was approved based on evidence that was substantially similar to the evidence contained, or, rather, not contained in this record of proceeding, however, the approval of the prior petition would have been material or gross error.

USCIS is not required to approve petitions where eligibility has not been demonstrated, merely because of prior approvals that may have been erroneous. *See, e.g.,* Matter of Church Scientology International, 19 I&N Dec. 593, 597 (Comm. 1988). Neither USCIS nor any other agency must treat acknowledged errors as binding precedent. Sussex Engg. Ltd. v. Montgomery 825 F.2d 1084, 1090 (6th Cir. 1987), *cert denied*, 485 U.S. 1008 (1988).

Also, the record must establish that a petitioner's imposition of a degree requirement is not merely a matter of preference for high-caliber candidates but is necessitated by performance requirements of **[*21]** the position. This record fails in this regard also. The petitioner's creation of a position with a perfunctory bachelor's degree requirement will not mask the fact that the position is not a specialty occupation. USCIS must examine the ultimate employment of the alien, and determine whether the position qualifies as a specialty occupation. *Cf.* Defensor v. Meissner, 201 F. 3d 384, 387-388 (5th Cir.

2000). The critical element is not the title of the position or an employer's self-imposed standards, but whether the position actually requires the theoretical and practical application of a body of highly specialized knowledge, and the attainment of a baccalaureate or higher degree in the specific specialty as the minimum for entry into the occupation as required by the Act. To interpret the regulations any other way would lead to absurd results: if USCIS were limited to reviewing a petitioner's self-imposed employment requirements, then any alien with a bachelor's degree could be brought into the United States to perform a menial, non-professional, or an otherwise non-specialty occupation, so long as the employer required all such employees to have baccalaureate or higher degrees. **[*22]** *See* id. at 388.

Finally, the petitioner has not satisfied the fourth criterion of 8 C.F.R. § 214.2(h)(4)(iii)(A), which is reserved for positions with specific duties so specialized and complex that their performance requires knowledge that is usually associated with the attainment of a baccalaureate or higher degree in a specific specialty.

As reflected in the earlier quoted list of the beneficiary's duties from the petitioner's letter of response to the RFE, the record of proceeding does not develop the level of specialization and complexity of the proposed duties beyond showing that they generally comport with those of the computer systems analyst occupational category. As reflected in this decision's earlier comments on the *Handbook's* information about computer systems analysts, the educational requirements for positions in this occupation are so varied as to indicate that requisite knowledge for them is not usually associated with a baccalaureate or higher degree in a specific specialty. In this regard, the AAO again notes that the record indicates that the substantive nature of the specific duties, and consequently the knowledge required to perform them, would **[*23]** be determined by particular client projects to which the beneficiary would be assigned, and that the record contains no contracts, work orders, or other documentation generated by such clients that would indicate the substantive nature of the beneficiary's work. In the absence of such evidence, the record lacks a sufficient evidentiary foundation for USCIS to reasonably determine the level of knowledge in any specific specialty that would be required by or associated with the proffered position.

As the petitioner has failed to establish that the proffered position qualifies as a specialty occupation under any criterion of 8 C.F.R. § 214.2(h)(4)(iii)(A), the director's decision to deny the petition shall not be disturbed.

**BENEFICIARY QUALIFICATION ISSUE**

As will be discussed below, upon review of the entire record of proceeding, including all of the petitioner's submissions from the filing of the Form I-129 through the matters submitted on appeal, the AAO also concludes that the director's decision was correct in denying the petition for failure to establish the beneficiary as qualified to serve in a specialty occupation related to computer programming. For this reason **[*24]** also, the director's decision will not be disturbed.

Prefatory to its beneficiary qualification analysis, the AAO finds that the record supports the director's assessment that the description of the duties comprising the proffered position defines the proffered position as requiring knowledge that is specifically computer-related, and not knowledge acquired by coursework in metallurgical engineering, which is what the beneficiary's mark sheets indicate. 2⬇

The statutory and regulatory framework that the AAO must apply in its consideration of the evidence of the beneficiary's qualification to serve in a specialty occupation follows below.

Section 214(i)(2) of the Act, 8 U.S.C. § 1184(i)(2), states that an alien applying for classification as an H-1B nonimmigrant worker must possess:

> (A) full state licensure to practice in the occupation, if such licensure is required to practice in the occupation,
>
> (B) completion of the degree described in paragraph (1)(B) for the occupation, or
>
> (C) **[*25]**
>
>> (i) experience in the specialty equivalent to the completion of such degree, and
>>
>> (ii) recognition of expertise in the specialty through progressively responsible positions relating to the specialty.

The degree referenced by section 214(i)(l)(B) of the Act, 8 U.S.C. § 1184(i)(l)(B), means one in a

specific specialty that is characterized by a body of highly specialized knowledge that must be theoretically and practically applied in performing the duties of the proffered position.

Therefore, to qualify an alien for classification as an H-IB nonimmigrant worker under the Act, the petitioner must establish that the beneficiary has completed a degree in the specialty that the occupation requires, and that, if he or she does not possess the required degree, the petitioner must demonstrate that the alien has [1] experience in the specialty equivalent to the completion of such degree, and [2] recognition of expertise in the specialty through progressively responsible positions relating to the specialty.

In implementing section 214(i)(2) of the Act, 8 U.S.C. § 1184(i)(2), the regulation at 8 C.F.R. § 214.2(h)(4)(iii)(C) states that an alien must meet one of the following **[*26]** criteria in order to qualify to perform services in a specialty occupation:

> *(1)* Hold a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;
>
> *(2)* Hold a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;
>
> *(3)* Hold an unrestricted state license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or
>
> *(4)* Have [a] education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and [b] have recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

In order to equate a beneficiary's credentials to a U.S. baccalaureate or higher degree under 8 C.F.R. § 214.2(h)(4)(iii)(C)(4), the provisions at 8 C.F.R. § 214.2(h)(4)(iii)(D) require one or more of the **[*27]** following:

> *(1)* An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience;
>
> *(2)* The results of recognized college-level equivalency examinations or special credit programs, such as the College Level Examination Program (CLEP), or Program on Noncollegiate Sponsored Instruction (PONSI);
>
> *(3)* An evaluation of education by a reliable credentials evaluation service which specializes in evaluating foreign educational credentials;
>
> *(4)* Evidence of certification or registration from a nationally-recognized professional association or society for the specialty that is known to grant certification or registration to persons in the occupational specialty who have achieved a certain level of competence in the specialty;
>
> *(5)* A determination by the Service that the equivalent **[*28]** of the degree required by the specialty occupation has been acquired through a combination of education, specialized training, and/or work experience in areas related to the specialty and that the alien has achieved recognition of expertise in the specialty occupation as a result of such training and experience… .

**EVIDENCE BEFORE THE DIRECTOR WHEN HE ISSUED HIS DECISION**

*Educational Records*

When the director rendered his decision, the record's documentary evidence of the beneficiary's post-secondary education consisted of copies of Mark Sheets for semesters 4 through 8 of a Four-Year Integrated Course for a Bachelor's Degree in Metallurgy Engineering at Pt. Ravishankar Shukla University. The petitioner had not complied with the request for "a copy of the beneficiary's Bachelor's

degree," which had been included in the request for additional evidence (RFE) issued by the service center.

The director's decision includes specific findings on the inadequacy of documentary evidence from Pt. Ravishankar Shukla University, namely, that the mark sheets do not indicate that a degree was actually conferred, and that a copy of the beneficiary's degree was not submitted, **[*29]** although requested in the RFE. On these facts, the director concluded, "It appears that the beneficiary engaged in coursework toward a degree in Metallurgical Engineering, but did not actually complete the requirements of the degree." The AAO finds that the record as constituted when the director issued his decision supported this conclusion.

Based upon the mark sheets before him, the director also found that the record indicates that the beneficiary "has engaged in up to four Bachelor's level classes related to the proffered position." Upon review of the record, the AAO finds only two computer courses in the mark sheets that were in the record at the time of the director's decision. On the mark sheets they appear as "Numerical Analysis & Computer Programming" (on the 4th Semester mark sheet) and "Computer Programming & Applications in Metallurgy" (on the 6th Semester mark sheet). The director concluded that the evidence of record was insufficient to establish that the beneficiary's post-secondary coursework is equivalent to a bachelor's degree "in a field of study related to computer programming and analysis." The AAO finds that the record of proceeding supports this determination. **[*30]**

*Submissions from former employers*

When the director issued his decision, the record contained two memoranda from former employers of the beneficiary. In the first memorandum, dated August 20, 2007, the Manager of Human Services of Webify Services (India) Pvt. Ltd., Mumbai, certifies that this firm employed the beneficiary as Software Programmer from August 2001 to May 2004. According to the memorandum, the beneficiary "had been involved in various phases of [the] Software Development Lifecycle like requirement analysis, application design, coding, code reviews, unit testing, documentation, etc."; and "successfully designed and developed applications using ASP, VB, Sql server, Oracle, C# and .NET technologies." The memorandum praises the beneficiary's analytical and problem-solving skills and his "key strength," "adapting to new technologies, providing solutions, having [a] good team spirit, and keeping the motivation of the team high." It also asserts that the beneficiary has "a sound knowledge of ASPO.NET, Design Pattern, and other scripting languages." The second memorandum, dated August 25, 2007, from the manager of Human Resources of another firm in India, Digital **[*31]** Group Infotech Pvt. Ltd., certifies that the beneficiary has been working for that enterprise as a Software Engineer since May 31, 2004. This memorandum states that the beneficiary "has been involved in various projects" in which he performed requirement analysis, application design, coding, code review, unit testing and documentation, software application development in web and client server technologies "using ASP.NET, Java Script, Ajax, C# and database using MS Sql server and Oracle." The memorandum further states that the beneficiary's work also involves "interaction with clients to prepare the specification document, functional specification, project plan, maintaining schedules for the rest of the team members, [and] designing the architecture of the applications and managing the whole team."

In his decision, the director discounted the evidentiary value of the two former employers' submissions by correctly noting that they did not establish that the beneficiary "has engaged in the practical application of a highly specialized knowledge for a period of time which would make up for the formal education he lacks."

The AAO observes that neither of the former employers' memoranda **[*32]** provide information about the substantive work that the beneficiary actually performed; the nature of the clientele for which the work was performed; the extent, if any, that his work included the theoretical and practical application of highly specialized knowledge required by any specialty occupation; and the educational credentials that were held by peers, supervisors, or subordinates with whom the beneficiary worked. As such, those documents are not probative of the beneficiary satisfying any of the beneficiary qualification criteria at 8 C.F.R. §§ 214.2(h)(4)(iii)(C) and (D), and they do not provide a sufficient factual basis for a reasonable and reliable determination of equivalency of the beneficiary's work experience to accredited U.S. college or university courses in any specialty.

*First evaluation of education and experience*

At the time of the director's decision, the record also included a document entitled "Academic Credential & Work Experience Evaluation," produced by IndoUS Technology & Educational Services (hereinafter referred to as the IUST&ES evaluation) in response to the service center's request for additional information (RFE). The IUST&ES evaluation's **[*33]** author opined that the beneficiary's coursework at Pt. Ravishankar Shukla University "is equivalent to a Bachelor's Degree in Metallurgical /Material Engineering and also equivalent to 60 credits of coursework towards a Bachelor's Degree in Computer Information Systems from an accredited college or University in the United States of America." The IUST&ES evaluation neither notes the existence of nor is accompanied by a diploma or any other document from Pt. Ravishankar Shukla University attesting that the institution determined that that the beneficiary qualified for the award of a bachelor's degree. The IUST&ES evaluation also opined that the

beneficiary's work experience "is equivalent to 60 credit hours of coursework towards a Bachelor's Degree in Computer Information Systems from an accredited college or University in the United States of America." The author of the IUST&ES evaluation concluded that the beneficiary "has credentials that are equivalent to a Bachelor's Degree in Computer Information Systems," on the basis of the beneficiary's "Bachelor's Degree transcripts in Metallurgical/Material Engineering and 6 years of progressively responsible Information Technology Work **[*34]** experience."

The director did not ascribe any evidentiary weight to the IUST&ES evaluation, based on his finding that few of the beneficiary's courses referenced in the evaluation appear directly related to nature of the proffered position, which the director identified as computer programming and analysis. The AAO concurs that the IUST&ES evaluation has no evidentiary merit. The record supports the director's specific finding about the lack of relevance of the referenced coursework to computer programming and analysis. The AAO also finds other grounds for dismissing the IUST&ES as unworthy of deference. The evaluator is not competent to render an evaluation of the educational equivalency of work experience, as the record does not establish that he is "an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience," as required by 8 C.F.R. § 214.2(h)(4)(iii)(D)(l). The evaluator's description of the work experience upon which he relies generally comports with, and is no more substantive than, the **[*35]** generalized information of the two former employers' letters. As noted in the earlier discussion of those letters, their information is not a sufficient factual basis for a responsible determination of the education-equivalency value of the beneficiary's work experience. The AAO further finds that the evaluator's satisfaction with such superficial information undermines his credibility so as to render unreliable all of the opinions expressed in the IUST&ES evaluation. USCIS may, in its discretion, use as advisory opinions statements submitted as expert testimony. However, where an opinion is not in accord with other information or is in any way questionable, USCIS is not required to accept or may give less weight to that evidence. Matter of Caron International, 19 I&N Dec. 791 (Comm. 1988). Further, USCIS uses an evaluation by a credentials evaluation organization of a person's foreign education as an advisory opinion only. Where an evaluation is not in accord with previous equivalencies or is in any way questionable, it may be discounted or given less weight. Matter of Sea, Inc., 19 I&N Dec. 817 (Comm. 1988).

**MATTERS SUBMITTED ON APPEAL**

It should be noted that **[*36]** the AAO will not consider the copy of the Pt. Ravishankar Shukla University document of October 21, 1993, which is submitted as evidence that the beneficiary attained a Bachelor of Engineering Degree. The reason is that such evidence was requested in the RFE but not included in the petitioner's RFE response. [4] The regulation at 8 C.F.R. § 103.2(b)(ll) provides the following rules on responding to an RFE. The petitioner has three options during the response period specified in the RFE: submission of a complete response containing all of the requested information; submission of a partial response with a request for a decision based on the record; or withdrawal of the petition. Submission of only some of the requested evidence will be considered a request for a decision on the record. Materials in response to the RFE must be submitted together at one time, along with the original RFE, and they must be filed within the period afforded in the RFE. Further, the regulation at 8 C.F.R. § 103.2(b)(8)(iv) states **[*37]** that in no case shall the maximum response period provided in an RFE exceed 12 weeks, and that additional time to respond may not be granted. Thus, the petitioner is afforded only one opportunity to file materials in response to the RFE. Operation of this provision precludes the petitioner from submitting on appeal any type of documentation requested in the RFE but not provided within the time specified in the RFE.

*Additional evaluations of education and experience*

On appeal, the petitioner submits evaluations provided by **[redacted]** of CCI and **[redacted]** of European-American University. As will now be explained, these evaluations have no probative value.

The record does not establish either evaluator as "an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience," as the regulation at 8 C.F.R. § 214.2(h)(4)(iii)(D)(l) requires of evaluators of the educational equivalency of a beneficiary's work experience. Further, as previously discussed in this decision, the former employers' **[*38]** letters, upon which it appears that the evaluators base their conclusions about the educational equivalency of the beneficiary's work experience, lack substantive information sufficient to serve as an adequate factual foundation for those conclusions. The AAO further finds that neither **[redacted]** nor **[redacted]** explains how the nature of the beneficiary's six years of work experience, as so generally addressed in their respective evaluations, was analyzed as conveying knowledge equivalent to coursework in Computer Information Systems at an accredited U.S. institution of higher learning, Also, the AAO finds that the evaluation documents procured form both **[redacted]** and **[redacted]** for this proceeding, and, by extension, the credential evaluations agencies that these persons represent, are neither credible nor worthy of any deference in this proceeding. The AAO bases this finding upon the superficiality of their examinations of the work experience, the skeletal nature of the evidence regarding

that experience, and the fact that the two evaluators nevertheless endorsing that experience as equivalent to years of U.S. coursework in a specific specialty. Where an opinion **[*39]** is not in accord with other information or is in any way questionable, USCIS is not required to accept or may give less weight to that evidence. *Matter of Caron International*. Further, where an advisory opinion is not in accord with previous equivalencies or is in any way questionable, it may be discounted or given less weight. Matter of Sea, Inc., 19 I&N Dec. 817 (Comm. 1988).

Further, none of the credential evaluation agency evaluations merit any deference for an additional reason, namely the petitioner's failure to address and resolve the material inconsistency in the ultimate conclusions as to the U.S. degree-equivalency presented by **[redacted]** and **[redacted]** on the one hand, and IUST&ES on the other. While **[redacted]** ClCevaluation and **[redacted]** E-AU evaluation opined that the beneficiary holds the equivalent of a U.S. Master's Degree in Computer Information Systems, the IUST&ES evaluator opined that the beneficiary holds the equivalent of a Bachelor's Degree in Computer Information Systems. Doubt cast on any aspect of the petitioner's proof may, of course, lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in **[*40]** support of the visa petition. It is incumbent upon the petitioner to resolve any inconsistencies in the record by independent objective evidence, and attempts to explain or reconcile such inconsistencies, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice. Matter of Ho Matter of Ho, 19 I&N Dec. 582, 59I-92 (BIA 1988).

**APPLICATION OF THE REGULATIONS AT 8 C.F.R. §§ 214.2(h)(4)(iii)(C) and (D).**

The beneficiary does not meet either of the criteria at 8 C.F.R. §§ 214.2(h)(4)(iii)(C)(I) and *(3)*, as there is no evidence of a U.S. accredited college or university baccalaureate or higher degree, or of an unrestricted state license, registration or certification which authorizes him to fully practice and be immediately engaged in a specialty occupation in the state of intended employment.

Next, the petitioner has not established that the beneficiary is qualified to serve in a specialty occupation under the criterion at 8 C.F.R. § 214.2(h)(4)(iii)(C)(2) for an alien holding a foreign degree determined to be equivalent to a U.S. accredited college or university baccalaureate or higher degree required by the pertinent specialty **[*41]** occupation. A favorable determination under this criterion is precluded by the AAO's findings disregarding the late-submitted Pt. Ravishankar Shukla University document and discounting the IUST&ES, CCI, and EA-U evaluations. Next, in order to equate a beneficiary's credentials to a U.S. baccalaureate or higher degree under 8 C.F.R. § 214.2(h)(4)(iii)(C)(4), the provisions at 8 C.F.R. § 214.2(h)(4)(iii)(D) require one or more of the following:

> *(1)* An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience;

> *(2)* The results of recognized college-level equivalency examinations or special credit programs, such as the College Level Examination Program (CLEP), or Program on Noncollegiate Sponsored Instruction (PONSI);

> *(3)* An evaluation of education by a reliable credentials evaluation service which specializes in evaluating foreign educational credentials; 5⬇

> *(4)* Evidence of certification or registration from a nationally-recognized professional association or society for the specialty that is known to grant certification or registration to persons in the occupational specialty who have achieved a certain level of competence in the specialty;

> *(5)* A determination by the Service that the equivalent of the degree required by the specialty occupation has been acquired through a combination of education, specialized training, and/or work experience in areas related to the specialty and that the alien has achieved recognition of expertise in the specialty occupation as a result of such training and experience… .

With regard to the criterion at 8 C.F.R. § 214.2(h)(4)(iii)(D)(I), the AAO finds that the record has not established that the evaluators who have opined on the educational equivalency of the beneficiary's work experience are officials who have "authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience," as required by this criterion. **[*43]** On this ground alone, their opinions on the beneficiary's work experience have no evidentiary value.

The criteria at 8 C.F.R. §§ 214.2(h)(4)(iii)(D)(2) and (4) are not factors in this proceeding, as the record contains no evidence related to them.

With regard to 8 C.F.R. § 214.2(h)(4)(iii)(D)(3), the AAO here reiterates its findings that the content of their evaluations preclude the AAO from finding that any of the three credential evaluation agencies involved in this proceeding merit deference as reliable credential evaluation services. Accordingly, their opinions as to the beneficiary's foreign coursework have no evidentiary value in this proceeding. Further, even if accepted, their opinions that the beneficiary's formal education in India is equivalent to a U.S. bachelor's degree in Metallurgical Engineering would not establish that that degree is one required by the proffered position if such position were a specialty occupation. The evidence of record lacks evidence establishing that the nature of the work proposed for the beneficiary involves the application of a bachelor's degree level of knowledge in Metallurgical Engineering.

The remaining criterion for review is **[\*44]** 8 C.F.R. § 214.2(h)(4)(iii)(D)(5). It allows recognition of a beneficiary's qualification by a USCIS determination that his or her training or work experience is equivalent to U.S. baccalaureate coursework in a specific specialty. This criterion provides that, for each year of college-level training the alien lacks:

> [I]t must be clearly demonstrated [1] that the alien's training and/or work experience included the theoretical and practical application of specialized knowledge required by the specialty occupation; [2] that the alien's experience was gained while working with peers, supervisors, or subordinates who have a degree or its equivalent in the specialty occupation; and [3] that the alien has recognition of expertise in the specialty evidenced by at least one type of documentation such as:
>
> > *(i)* Recognition of expertise in the specialty occupation by at least two recognized authorities in the same specialty occupation 6;
> >
> > *(ii)* Membership in a recognized foreign or United States **[\*45]** association or society in the specialty occupation;
> >
> > *(iii)* Published material by or about the alien in professional publications, trade journals, books, or major newspapers;
> >
> > *(iv)* Licensure or registration to practice the specialty occupation in a foreign country; or
> >
> > *(v)* Achievements which a recognized authority has determined to be significant contributions to the field of the specialty occupation.

Neither the skeletal letters from the beneficiary's former employers nor any other evidence of record demonstrates the extent of the theoretical and practical application of specialized knowledge in any specialty that was involved in the beneficiary's work; that the alien's experience was gained while working with peers, supervisors, or subordinates who have a degree or its equivalent in any particular specialty occupation; or that the alien has recognition of expertise in any specialty, as evidenced by at least one type of documentation such as those listed in this criterion. Consequently, the petitioner has not established that the beneficiary satisfies the criterion at 8 C.F.R. § 214.2(h)(4)(iii)(D)(5).

As the petition fails to establish that the beneficiary **[\*46]** is qualified to serve in any specialty occupation requiring an academic concentration or major in a computer-related specialty, the petition must also be denied for failure to qualify the beneficiary under 8 C.F.R. §§ 214.2(h)(4)(iii)(C) and (D).

An application or petition that fails to comply with the technical requirements of the law may be denied by the AAO even if the Service Center does not identify all of the grounds for denial in the initial decision. *See* Spencer Enterprises, Inc. v. United States, 229 F. Supp. 2d 1025, 1043 (E.D. Cal. 2001), *aff'd*. 345 F.3d 683 (9th Cir. 2003); *see also* Dor v. INS, 891 F.2d 997, 1002 n. 9 (2d Cir. 1989)(noting that the AAO reviews appeals on a *de novo* basis).

The petition will be denied and the appeal dismissed for the above stated reasons, with each considered as an independent and alternative basis for the decision. In visa petition proceedings, the burden of proving eligibility for the benefit sought remains entirely with the petitioner. Section 291 of the Act, 8 U.S.C. § 1361. Here, that burden has not been met.

**ORDER:** The appeal is dismissed. The petition is denied.

[*47] Return to Text

BIA & AAU Non-Precedent Decisions

Copyright , Matthew Bender & Company, Inc., a member of the LexisNexis Group.

**Footnotes**

[1] Footnote 1. Unless otherwise indicated, hereinafter all references to the *Handbook* are to its 2008-2009 edition.

[2] Footnote 2. It is noted that, while the proffered position is not a specialty occupation requiring a degree in a specific specialty, if such a determination had been made, the required degree would be one in a computer-related major, not a degree in metallurgical engineering. As such, the following analysis of the beneficiary's qualifications and his eligibility to be employed in the proffered position will be based on the requirement that this position, if it were a specialty occupation, would necessitate the beneficiary to have a bachelor's or higher degree, or its equivalent, in a computer-related field.

[3] [*48] Footnote 3. The petitioner should note that, in accordance with this provision, the AAO will accept a credentials evaluation service's evaluation of *education only*, not experience.

[4] Footnote 4. The AAO notes that even if this document would have no evidentiary value even if it had been timely submitted in response to the RFE. The regulation at 8 C.F.R. § 214.2(h)(4)(iv)(A) requires that diplomas or school records must be "executed by the person in charge of the of the records of the educational … institution." The record does not establish that the Pt. Ravishankar Shukla University document of October 21, 1993 was so executed.

[5] Footnote 5. The petitioner should note that, in accordance with this provision, the AAO will accept a credentials evaluation service's evaluation of *education only*, not experience.

[6] Footnote 6. *Recognized authority* means a person or organization with expertise in a particular field, special skills or knowledge in that field, and the expertise to render the type of

opinion requested. A recognized authority's opinion must state: (l)the writer's qualifications as an expert; (2) the writer's experience giving such opinions, citing specific instances where past opinions have been accepted as authoritative and by whom; (3) how the conclusions were reached; and (4) the basis for the conclusions supported by copies or citations of any research material used. 8 C.F.R. § 214.2(h)(4)(ii).

**Content Type:** Administrative Materials

**Terms:** "Consonant with section 214(i)(l) of the Act and the regulation at 8 C.F.R. § 214.2(h)(4)(ii), U.S. Citizenship and Immigration Services (USCIS) consistently interprets the term 'degree' in the criteria at 8 C.F.R. § 214.2(h)(4)(iii)(A) to mean not just any baccalaureate or higher degree, but one in a specific specialty that is directly related to the proffered position. Applying this standard, USCIS regularly approves H-1B petitions for qualified aliens who are to be employed as engineers, computer scientists, certified public accountants, college professors, and other such professions. These occupations all require a baccalaureate degree in the specific specialty as a minimum for entry into the occupation and fairly represent the types of professions that Congress contemplated when it created the H-1B visa category."

**Narrow By:** Sources: Immigration Non-Precedent Decisions: BIA, AAO/AAU All Content Types: Administrative Materials

**Date and Time:** Mar 19, 2018   07:32:12 p.m. EDT



| About LexisNexis® | Privacy Policy | Terms & Conditions | Sign Out | Copyright © 2018 LexisNexis. All rights reserved. |

